IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Case No: 1:22-CR-120 |
| | ) |
| William Christopher Kuehner, | ) |
| | ) |
| *Defendant.* | ) |

**UNITED STATES' MOTION FOR REVOCATION OF RELEASE ORDER**

The United States of America respectfully moves the Court under 18 U.S.C. § 3145(a)(1) to revoke the September 27, 2022 order (hereinafter "the Order") issued by a Magistrate Judge in the Western District of Washington, releasing the defendant, William Christopher Kuehner, on bond and conditions of pretrial release. The defendant has been indicted for engaging in a child exploitation enterprise, in violation of 18 U.S.C. 2252A(g). In addition to his heinous conduct as a prominent member of a child exploitation website, newly discovered information not available for consideration by the Court that ordered Kuehner's release indicates that the defendant was communicating directly with a minor victim whom he met on this exploitative website long after the site was shut down, soliciting nude photos from her and repeatedly asking her to come to the United States so that they could get married. The defendant's detention pending trial is appropriate, in light of the significant risk that the defendant presents to the safety of the community, and to children, in particular, and his risk of non-appearance.

## BACKGROUND

A.   **Rapey Website Investigation**

From at least September of 2020 through December of 2020, "Rapey.su" operated as a website dedicated to, among other things, the sexual exploitation of children. The website had approximately 8,000 members, which included minors (some were victims of the adults on the site and some produced sexually explicit images without any known adult involvement). A hallmark of the Rapey website was its "confirmation" process, whereby users—particularly female users, including minor females—had to submit a photo to one of the website's administrators with the website's name written on her body. Although the requirements for these confirmation photos varied amongst the different administrators or confirmers and did not always require the aspiring member to be engaged in sexually explicit conduct, the options for confirmation included nude or sexually explicit photos and this conduct was frequently encouraged.

Homeland Security Investigations ("HSI") discovered dozens of minor victims who were exploited on the Rapey website, some as young as 10 years old. To date, approximately 40 minor victims have been identified. Evidence obtained through the investigation further suggests that multiple members of the website traveled to meet minors whom they met on the website in person in order to engage in sexual activity with them. Multiple Rapey users have been arrested and charged around the country, including two defendants who have been convicted on federal charges for production of child sexual abuse material.

B.   **Kuehner's Conduct**

Kuehner, using the moniker "nechris" on the website, was a prominent member and administrator of Rapey website who was responsible for enticing a 14-year-old to produce child sexual abuse material and for receiving such material from at least four minors whom he met

2

through the website. Not only did Kuehner engage in several unlawful activities on the website, but the government very recently discovered that Kuehner, who is 38 years old, repeatedly communicated with a (then) 17-year-old victim ("Minor Victim 1") he met through the Rapey website – including long after the website was shut down. During these communications, and while Minor Victim 1 was still 17 years old, Kuehner requested nude images from her, sent her a picture of his penis, made sexual comments about her body, told her he was in love with her and that he wished he was touching her, repeatedly asked her to move to the United States and marry him, and even sent her a gift card. Moreover, after not speaking for several months, Kuehner reached out to Minor Victim 1 (who was then 18 years old) *after* HSI executed a search warrant on his home in connection with this investigation, nonchalantly telling her that law enforcement had taken his electronic devices. This information related to the defendant's conduct with Minor Victim 1 was very recently obtained by the government and was not known to the Court in the Western District of Washington at the time the Court ordered Kuehner's release.

Review of the website content and Kuehner's devices demonstrated that, on a least three occasions, Kuehner downloaded child sexual abuse material of Minor Victim 1 from the Rapey website. Minor Victim 1 was a well-known minor on the website who openly reported her age as 17-years-old in her publicly viewable profile. Moreover, Minor Victim 1's photos on the website depict what clearly appears to be a minor female. For example:

- In a conversation titled "view from behind," Minor Victim 1 posted a closeup view of her buttocks and thighs with her genitals, vagina, and anus as the focal point of the image. During the forensic exam of Kuehner's computer, this image was located in a folder -- titled with Minor Victim 1's website username -- along with several additional images.

3

- In a conversation titled "bubble bath <3," Minor Victim 1 posted an image of herself nude in a bathtub on her hands and knees faced away from the camera, with her anus and genitals visible and the focal point of the image. This image was found on Kuehner's computer in two folders titled with Minor Victim 1's username.

- In a conversation titled by three heart emojis, Minor Victim 1 posted a closeup image of what appears to be a minor female's genitals. This image was also found on Kuehner's computer in a folder titled with Minor Victim 1's username.

Additionally, while a prominent member on the Rapey website, Kuehner produced child sexual abuse material with an identified minor who publicly reported her age as 14-years-old on the website. The following is an excerpt from a discussion between Kuehner and the 14-year-old victim ("Minor Victim 2")[1]:

**Nechris**: I'll take it to her gash

**Minor Victim 2**: gash?

**Nechris**: it's slang for vagina

**Minor Victim 2**: ohhhh

**Nechris**: You have pretty brown eyes @[*Minor Victim 2*], and only like two pitures [*sic*]. Enough to get hard over but, not enough to finish.

*Other users start discussing how many times a day they masturbate.*

**Nechris**: @[*Minor Victim 2*] don't worry about posting anything. Just dm me directly, everyone else can just be jealous.

**Minor Victim 2**: mines probably like 15

**Minor Victim 2**: haha

**Nechris**: video or it doesn't count

---

[1] Minor Victim 2 has since been identified, and is known indeed to have been 14 years old at the time of the conversation described herein.

4

On October 1, 2020, Minor Victim 2 created a posting titled "Me 😉" that had a "pussy" badge preceding it, in the "Whores > Femoid Gallery" section of the website. She posts a nude video of herself masturbating, and she tags the photo: "@nechris :)" **Nechris** responds: "Amazing"

On October 3, 2020, in one of the chat areas on the site, **Nechris** writes: "I told [*Minor Victim 2*] that many of us want to see more, she asked see more what, I said pussy, that's why she posted that video and tagged me"

In addition to producing child sexual abuse material with Minor Victim 2, Kuehner sought a sexually explicit video from another identified 14-year-old on the website ("Minor Victim 3"). On October 2, 2020, the following conversation occurred between Kuehner ("Nechris") and the main administrator of the website ("Leucosticte"):

**Leucosticte**: then the one [*Minor Victim 3*] is going to do where she fucks her face with a dildo

**Leucosticte**: I forget what we're gonna call that one

**Nechris**: @[*Minor Victim 3*] Let's see this one. [*emoji*] [*tags user "Agent Nippy"*]

**Leucosticte**: she doesn't have the dildo yet

Thereafter, a search warrant was issued for Kuehner's residence in Bremerton, Washington, and several devices were seized, including the computer on which the images of Minor Victim 1 were located.

## ARGUMENT

**I)  The Court has authority to revoke the Order of Release, and a rebuttable presumption of detention exists in this matter.**

Under 18 U.S.C. § 3145, "[i]f a person is ordered released by a magistrate judge . . . the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release." 18 U.S.C. § 3145(a). The district court's review of the Magistrate Judge's opinion is de novo. *See United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001); *United States v. Koenig*, 912 F.2d 1190, 1190-93 (9th Cir. 1990); *United States v: Umali*, 2015 WL 7455540, at *1 (E.D. Va. 2015). The district court may review the evidence before the magistrate judge or conduct its own evidentiary hearing. *Koenig*, 912 F.2d at 1193. If the court finds that no "condition or combination of conditions will reasonably assure the appearance of the person as required, and the safety of any other person and the community," the Court "shall order the detention of the person before trial." 18 U.S.C. § 3142(e).

The Court must detain the defendant if the Government proves by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the defendant's appearance at future court proceedings, or by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any other person and the community. *Umali*, 2015 WL 7455540, at *1. "For pretrial detention to be imposed on a defendant, the lack of reasonable assurance of either the defendant's appearance or the safety of others or the community, is sufficient; both are not required." *Stewart*, 19 F. App'x at 48. In this case, moreover, there is a rebuttable presumption that no condition or combination of conditions will suffice if there is probable cause to believe that Defendant committed an offense involving a minor victim,

including production and attempted production of child pornography under 18 U.S.C. § 2251(a) and (e). *See* 18 U.S.C. § 3142(e)(3)(E).[2]

The factors to be considered in determining whether to release a defendant pending trial include: (1) the nature and circumstances of the offenses charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug and alcohol abuse, criminal history, and record concerning appearances at court proceedings; and (4) the nature and seriousness of danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

### II) The egregious nature of the offense, the ample evidence in this case, and the danger he poses to the community weigh strongly in favor of detention.

*Nature and circumstances of the offense.* The nature and circumstances of this offense are particularly egregious. Kuehner poses a significant threat to the community, as evidenced by the charge itself. *See, e.g.*, *United States v. Crossfield*, Crim. No. 18-352, 2018 WL 4615974, at *3 (E.D. Pa. Sept. 26, 2018); *see also United States v. Stone*, 608 F.3d 939, 947 (6th Cir. 2010) (observing that "charges, on their face" can "indicate a strong threat to society"). Kuehner exploited multiple children on Rapey, and his evident skills at grooming and manipulating children

---

[2] While the Bail Reform Act does not specifically mention 18 U.S.C. § 2252A(g) as one of the statutes giving rise to a presumption of detention, the § 2252A(g) offense itself consists of committing other enumerated offenses as part of a pattern of offenses involving more than one minor victim and in concert with three or more other persons. Here, as noted above, the underlying offenses include the production and attempted production of child pornography (in violation of 18 U.S.C. § 2251(a)) and the receipt of child pornography (in violation of 18 U.S.C. § 2252(a)(2)), both of which do trigger the Bail Reform Act's presumption of detention. Accordingly, the statutory presumption of detention is applicable to Kuehner.

7

only require internet access, a ubiquitous resource. *See Crossfield*, 2018 WL 4615974, at *3 (because applications "are accessible from any computer or smartphone . . . it would be extremely difficult, if not impossible, to monitor [the defendant's] internet usage and to assure that he will not access, share, or create child pornography while on release"). That access to the internet, as well as to any phone, present the opportunity for Kuehner to communicate with other members of Rapey, including minor victims. In fact, Kuehner has already demonstrated his willingness to reach out to victims from the site not only after the site was shut down, but further even *after* law enforcement executed a search warrant on his home. This demonstrates significant danger, since it evidences Kuehner's commitment to exploiting children regardless of his knowledge that an investigation exists or that authorities are aware of his misconduct, and particularly so here because the investigation is ongoing and not all of the victims and users have been identified. Multiple Rapey users traveled to meet minors and engage in sexual activity with them, and multiple Rapey users abused and photographed children within their care or custody, strongly suggesting that Kuehner's frequently-expressed desire to sexually exploit children, including Minor Victim 1, similarly was not merely hypothetical or fantasizing.

<u>*Nature and seriousness of danger to the public:*</u>  The stakes for potential future victims are extremely high in this case. It is well-established that victims of the sexual abuse that occurs during the production of child pornography often bear profound burdens beyond the original trauma—and that the suffering caused by this exploitation often continues for the rest of their lives. Where "the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place. A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography." *United States v. Church*, 701 F. Supp. 2d 814, 820 (W.D. Va. 2010) (quoting David

Shouvlin, *Preventing the Sexual Exploitation of Children: A Model Act,* 17 Wake Forest L. Rev. 535, 545 (1981)). In some cases, victims of child sexual abuse are hounded by strangers long after they have become adults, and once that happens, there is little prospect of an end to the torment. Even if this were to only happen once, the victim's life would be irrevocably altered. The Court should not accept that risk, nor the even greater risk—and strong likelihood—that the defendant will continue his established pattern of attempting to induce children to produce and send these sexually explicit images.

<u>*Weight of the evidence and risk of non-appearance:*</u>   Even if Kuehner appears for his arraignment, he remains a risk of non-appearance moving forward given the length of the sentence he faces and the weight of the evidence against him. First, the length of Kuehner's potential sentence—both the 20-year mandatory minimum and the high Guidelines range he faces above that—presents a powerful motivator to flee. *See United States* v. *Khusanov*, 731 F. App'x 19, 21 (2d Cir. 2018) ("[A] district court does not clearly err in concluding that a defendant facing a potentially lengthy prison sentence possess a strong motive to flee."); *see, e.g.*, *United States* v. *Khraizat*, 2000 WL 1769637, 238 F.3d 425 (table), at *2 (6th Cir. 2000) (considering defendant's "lengthier sentence if convicted" in evaluating flight risk). This consequence is not remote – the evidence against Kuehner is very strong, including his own admission that he is "Nechris," the credible evidence of his conduct as depicted on the website, and the recently discovered information that he continued communicating with and seeking nude images from at least one identified minor from the site. This strengthens the case for detention. *See, e.g.*, *Crossfield*, 2018 WL 4615974, at *2 (in child exploitation enterprise case, weight of the evidence—including defendant's admissions in law enforcement interview—is a relevant factor supporting affirmance of detention order).

## CONCLUSION

The danger the defendant poses to the public—and to minors, in particular—is profound, compelling, and unacceptable, and the proposed conditions of release ordered by the Magistrate Judge are woefully insufficient to mitigate it. His pattern of attempting to solicit sexually explicit images from minors is considerable, and the fact that he continued to solicit these images from and engage in sexual discussions with at least one minor victim after the site was shut down—and even communicated with her after law enforcement executed the search on his home—is particularly concerning. There are no conditions that could adequately protect children from his behavior, and the damage—should the defendant choose to re-offend while under supervision—would be irreparable. Accordingly, the government respectfully requests that the Court revoke the Order of Release and require that the defendant remain detained pending trial.

Respectfully submitted,

Jessica D. Aber
United States Attorney


By: _____/s/_____
Whitney Kramer
Special Assistant United States Attorney (LT)
Seth Schlessinger
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that, on October 1, 2022, the foregoing was filed with the Clerk of Court, and that undersigned counsel emailed a copy to the defendant's counsel of record.

                                        /s/
                              Whitney Kramer
                              Special Assistant United States Attorney (LT)